Watson v. Union Iron and Steel Co.

## William Watson

### v.

## Union Iron and Steel Company.

1. Instructions.—Where eleven instructions were given for the de-fendant, most of them stating accurately and tersely the rules of law appli-cable to the case upon the defendant's theory as to the facts, and the court, after reading these instructions, read one prepared by himself, in which he commenced by saying that the plaintiff had asked no instructions and that such of those asked by the defendant as he had thought to be correct and had read to the jury by no means covered the case which they had to decide, and that he thought he ought not to let the case go in this loose way. *Held,* that such introductory clause is obnoxious to grave criticism.

2. Vendor and vendee—Fraud—Rescission of contract.—Where a part of the hypothesis of an instruction submitted was of a fraud perpe-trated upon the plaintiff, the vendee, by means of false and fraudulent rep-resentations as to the price paid for certain land by defendant, the vendor, and the action brought was assumpsit. *Held,* that no recovery can be had on the ground of fraud, at least in this form of action, until there has been a rescission of the contract.

3. Agency.—The rule which governs in case of an actual agency. applies where there is a voluntary assumption of agency; whether the act of agency be by actual employment by the parties. or as a volunteer, can make no dif-ference as to the responsibilities growing out of the relation.

4. INSTRUCTION—AGENCY.—Where defendant was superintendent of plaintiff's works in Chicago, and had been sent by plaintiff to investigate certain iron mines in the Lake Superior region, and if, on investigation, he deemed it advisable, to secure for plaintiff certain interests therein, and it appeared from the evidence that he was neither directed nor authorized to purchase for plaintiff the lands in question, but that such purchase was outside of the actual purview of his agency, and the question of fact, to be determined by the jury, was whether defendant, at the time he made the purchase of the lands, *undertook* to act as the plaintiff's agent, and the evidence as to this issue was conflicting. *Held*, that the instruction given by the court in this instance was erroneous, in that it required the jury to find, not the fact in issue, but only certain evidence tending to establish that fact.

ERROR to the Superior Court of Cook county; the Hon. JoSEPH E. GARY, Judge, presiding. Opinion filed November 11, 1884.

This was an action of assumpsit brought by the Union Iron and Steel Company, a corporation located and having its principal place of business in Chicago, against William Watson, for money had and received. At the time of the transactions in question the plaintiff was engaged in manufacturing iron and steel from ore obtained in part from mines in the Lake Superior region. It then, as it appears, owned no mines, but had to some extent obtained leases of mines already in operation and taken its ore therefrom. The defendant at that time was in the employ of the plaintiff as superintendent of its works in Chicago, at a salary of $5,000 per annum. and as such superintendent had charge of its manufacturing business, hired and discharged its employes, and was occasionally dispatched to the mining regions to examine and report upon mines which the company contemplated securing, and, if he deemed advisable, to obtain on behalf of the company leases therefor.

The defendant appears to have visited the Lake Superior mines once or twice on such errand in the early part of 1881, and in March of that year he went again under instructions from the president of the company to investigate as to the value of a certain mine, and also to secure for the company a particular mine for which it then had an option, if he found it

a good property and was of opinion that the company ought to have it. Instructions to that effect were given him in writing by the president, and the evidence is conflicting as to whether he was not also orally instructed by the president before going, as to the same matter. There is no evidence that he was directed to investigate for the company any property other than said mines, or to purchase for it any lands not connected therewith.

While in the mining region, the defendant met Jacob F. Schafer and Joseph A. Ames, who were then engaged in exploring government lands in that region, and making out a particular description of each tract, the kinds, quality and amount of timber, and what indications of mineral, if any, were to be seen thereon. These descriptions they proposed to sell to the defendant at the rate of seventy-five cents per acre, payable in case on investigation they turned out to be accurate, and the defendant succeeded in entering and purchasing from the government the lands therein described. This proposition was accepted by the defendant, and in pursuance of it he entered in his own name in April or May, about 1,881 acres, and in July following about 3,908 acres, paying Schafer and Ames $.75 per acre for the information contained in said descriptions, and paying $1.25 per acre to the government, making in all $2 per acre. These lands were mainly timber lands, and only two or three forty-acre tracts showed any indications of mineral.

After making the earlier of these entries, the defendant informed the president of the company of his purchase, and proposed that the company take the lands off his hands. As to what transpired in relation to this matter, the evidence is conflicting. The plaintiff's evidence tends to show that the defendant gave as a reason why he had purchased the lands in his own name, that he had not time to correspond with the president of the company, but was obliged to take them at once or not at all, and offered to let the company have them, if it wanted them, at what they had cost him, saying at the same time that they had cost him $5.10 per acre; that the president having implicit confidence in him, and relying upon

his statement as to their cost, agreed to take the lands from him for the company at that price; that the defendant there-upon assigned to the company the certificates of entry, and subsequently received credit therefor on the books of the company at $5.10 per acre; that several months afterward the defendant delivered to the company's secretary, in the absence of the president, the certificates of the land subsequently entered, and represented to him that they were the residue of the certificates included in the former transaction, and that the secretary thereupon received the same from him and gave him credit therefor at the rate of $5 per acre. It further appears that the company did not ascertain the truth in relation to the cost of the lands until after the defendant's account had been settled up and he had been discharged from its service.

The defendant's evidence tends to show that the defendant purchased said lands in his own name and for his own benefit; that some time after making the first purchase, he mentioned the matter to the company's president, and that a negotiation between them for the purchase of the lands for the company ensued, which resulted in their sale to the company for $5.10 per acre; that after he had entered the residue of the lands he again met the president and informed him of that purchase also, and that the latter offered to purchase said lands and asked the defendant his price; that after some negotiation, $5 per acre was agreed upon, and the sale made to the company at that price.

The plaintiff seeks to recover the difference between the price paid to the defendant for the lands and what they cost him. A large number of instructions to the jury were asked on behalf of the defendant, eleven of which were given. No instructions were asked on behalf of the plaintiff, but the court, on his own motion, instructed the jury as follows:

"Gentlemen of the jury: The plaintiffs have asked no instructions, and of those asked by the defendant, what I have thought to be correct and have read to you by no means cover the case which you have to decide. I do not think I ought to let the case go in that loose way. The theory of the admin-

istration of the law is, that there are rules and principles by which the rights of parties litigant are governed with which a judge is better acquainted than a jury, and that he should tell them, after the evidence and arguments have been heard, what those rules and principles are; and, therefore, I have written and now read to you as follows:

"If the defendant represented to the president of the plaintiffs that the lands which he had bought were such as he, at the time that he bought the same, thought it was for the interest of the plaintiffs to buy, and that he would have procured for the plaintiffs an option to buy the same and reported the same to the plaintiffs for their approval but for the fact that he had to act quickly or he could not get the lands, and therefore he had bought them in his own name, but for the account of the plaintiffs, if they chose to take them from him at what they cost him, and represented also that they cost him $5.10 per acre, when in fact they had cost him much less; and if relying upon and believing such representations, the president of the plaintiffs directed the purchase of the lands from the defendant at the price he said they cost him, and the plaintiffs did buy them from the defendant and pay him $5.10 per acre for the lands so bought by the defendant; and if at the time the defendant bought the lands, and at the time he sold them to the plaintiffs, the defendant was the superintendent of the works of the plaintiffs, and had been sent to the vicinity of the lands by the plaintiffs for the purpose of examining iron ore mines, in order that the plaintiffs might buy them, and with authority to negotiate for such mines for the plaintiffs; and if the position which the defendant occupied in the service of the plaintiffs in any material degree contributed to induce the president of the plaintiffs to rely upon his representations and buy the lands of the defendant, then the plaintiff may now recover the difference between the sum the lands cost the defendant and the sum the plaintiffs paid him therefor.

"So far this instruction relates only to the first lot of lands.

"As to the second lot, if the defendant induced the plaintiff to pay him for the same, at the rate of $5 per acre, upon

the representation that the second lot of lands were included in the arrangement which the defendant had made with the president of the plaintiffs, and that the cost of the second lot was $5 per acre, and if the plaintiffs are entitled to recover as to the first lot upon the principles stated in the part of this instruction relating to the first lot, and if there had in fact been no negotiations between the president of the plaintiffs and the defendant as to the second lot, then the plaintiffs may now recover the difference between the sum the second lot of lands cost the defendant, and the sum the plaintiffs paid him therefor.

" But, unless the jury find from the evidence that the first lot of lands was disposed of by the defendant to the plaintiffs in the manner recited in this instruction, the plaintiff can not recover.

" It is not necessary that any representations of the defendant, upon which the plaintiffs may claim to recover, should have been made in any particular form of words.

" If the defendant used any form of words calculated to induce the president of the plaintiffs to believe that a certain state of facts was true, and which fairly meant that it was true, if the president did therefrom so believe, that constitutes a representation that such state of facts did exist.

" What did take place and what are the real facts of the case the jury are to find solely from the evidence. They are not to regard an instruction as containing any hint or intimation as to what are the facts, or what the verdict of the jury should be, but the burden is on the plaintiffs to prove their case by a preponderance of all the evidence in the case, or the verdict should be for the defendant."

The jury thereupon found the issues for the plaintiff, and assessed the plaintiff's damages at $19,668.25, for which sum and costs the plaintiff had judgment.

Messrs. SWETT, HASKELL & GROSSCUP, for plaintiff in error; that the instruction given by the court was erroneous, cited 3 Wait's Actions and Defenses, 463; Ely v. Hanford, 65 Ill. 265; Ætna Life Ins. Co. v. Church, 21 O. St. 492.

Messrs. STILES & LEWIS, for defendant in error; as to agency, cited Cottom v. Holliday, 59 Ill. 179; Gromley v. Webb, 44 Mo. 444; Dutton v. Willner, 52 N. Y. 312; Davis v. Hamlin, 108 Ill. 39; Switzer v. Skiles, 3 Gilm. 529; Mason v. Bauman, 62 Ill. 76; Tewksbury v. Spruance, 75 Ill. 187; Kerfoot v. Hyman, 52 Ill. 512; Dennis v. McCagg, 32 Ill. 429; Bain v. Brown, 56 N. Y. 285; Wolford v. Harrington, 74 Pa. 311; Buntar v. Miles, 30 Me. 431; Cullen v. Denmon, 111 Mass. 474; Taylor v. Salmon, 4 M. & C. 136.

A sale of property at cost is a valid contract, and if the vendor, by misrepresentation, obtains more than cost, he will be liable to the vendee for the excess, in an action for money had and received: Pickman v. Trinity Church, 123 Mass. 1; Devine v. Edwards, 87 Ill. 177; Stempel v. Thomas, 89 Ill. 146; Walker v. Coleman, 81 Ill. 390.

BAILEY, J.   The instruction given to the jury by the court, on his own motion, is, in our opinion, so far erroneous as to necessitate a reversal of the judgment.

The introductory clause of the instruction is obnoxious to grave criticism in that it tends to discredit the instructions given at the instance of the defendant.   Eleven instructions were given for the defendant, stating in plain and terse language, and in most of them correctly, the rules of law applicable to the case upon the defendant's theory as to the facts. Having read these instructions, the court proceeded to read an instruction prepared by himself, in which he commenced by saying that the plaintiff had asked no instructions, and that such of those asked by the defendant as he had thought to be correct, and had read to the jury, by no means covered the case which they had to decide, and that he thought he ought not to let the case go in that loose way.   The jury may well have understood this language as meaning that the instructions given for the defendant, though correct, constituted a loose and wholly inadequate presentation of the rules of law applicable to the case.   It is scarcely to be supposed that the jury would give to these instructions the considera-

tion to which they were properly entitled after their substantial impeachment by another instruction emanating from the court.

But there are other features of the instruction which require a more careful and elaborate consideration. The leading paragraph of the instruction, briefly stated, yet preserving every essential feature, holds, that if the defendant represented to the plaintiff's president that he bought the lands in question on the plaintiff's account, if it chose to take them at what they cost him, and explained to him how he happened to take the title in his own name, and also represented that they cost him $5.10, when in fact they cost him much less; and if said president, relying upon such representations, directed the purchase of said lands at that price, and the plaintiff purchased said lands of the defendant, and paid him $5.10 per acre therefor; and if at the time the defendant bought the lands, and at the time he sold them to the plaintiff, he was the plaintiff's superintendent, and had been sent by the plaintiff to the vicinity of said lands to examine and negotiate for iron ore mines; and if his position in the service of the plaintiff in any material degree contributed to induce said president to rely upon his representations and buy said lands of him, then the plaintiff may recover the difference between what the lands cost the defendant and what it paid him therefor.

It is not easy to determine the precise legal principle intended to be laid down in this instruction as the basis of a recovery. A part of the hypothesis submitted is that of a fraud perpetrated upon the plaintiff by means of false and fraudulent representations as to the price paid for the lands, yet it is manifest that no recovery can be had on the ground of fraud, at least in this form of action, until there has been a rescission of the contract.

Again it is urged that the plaintiff's right to a recovery may be based upon another principle, namely, that as the evidence tends to show that the agreement on the part of the defendant was to sell the lands to the plaintiff at what they cost him, the real price agreed upon was the cost, viz., $2 per

acre, and all paid in excess of that may be recovered back as money paid by mistake. Whether that rule is, under the evidence, applicable to this case or not, it is very clear that it is not the rule sought to be invoked by the instruction. There is no attempt to submit the hypothesis of an agreement of the terms here supposed, but merely the hypothesis of a representation as to the cost of the lands, which, though preceding and forming an inducement to the contract, was no part of the contract itself. The agreement supposed in the instruction is an agreement to pay $5.10 per acre, and not $2 per acre.

But if we comprehend the instruction correctly, it seems to have been the design of the court to submit to the jury the question whether or not there existed between the plaintiff and defendant, at the time of the purchase of said lands by the defendant, such relations as would make the purchase inure to the benefit of the plaintiff. It is not disputed that the defendant at that time was the superintendent of the plaintiff's works in Chicago, and that he had been sent by the plaintiff to investigate certain iron mines in the Lake Superior region, and if on investigation he deemed it advisable, to secure for the plaintiff certain interests therein. It also appeared from the evidence, with scarcely a shadow of controversy, that he was neither directed nor authorized by the plaintiff to purchase for it the lands in question, but that such purchase was outside of the actual purview of his agency. Had he been in fact the plaintiff's agent to make the purchase, nothing is clearer or better settled than the rule which would have precluded him from making the purchase for his own benefit. Dennis v. McCagg, 32 Ill. 429; Reigard v. McNeil, 38 Id. 400; Davis v. Hamlin, 108 Id. 38. Even the purchase with his own money would not in that case have exempted him from the operation of the rule, as he would then have held the title merely as security for the money thus advanced.

But the rule goes further. It is not essential that the purchase should have actually been within the purview of the defendant's authority as agent, if, at the time it was made, he assumed to act for the plaintiff and purchased for its benefit:

In Dennis v. McCagg, *supra*, it was held, that the rule which governs in case of an actual agency applies where there is a voluntary assumption of agency; and that whether the act of agency be by actual employment by the parties or as a volunteer, can make no difference as to the responsibilities growing out of the relation.   The same principle is recognized in Casey v. Casey, 14 Ill. 112, and Reigard v. McNeil, *supra*.

The case of Ely v. Hanford, 65 Ill. 267, to which we are referred, in no way conflicts with the rule above laid down, but on the contrary seems to expressly recognize it.   There Ely entered into a contract with Metz, the owner of a certain lot in Hyde Park, for the purchase of said lot for the benefit of himself and another for $2,500.   Some days afterward, Ely represented to Hanford that the lot was owned by another and that he would act as Hanford's agent in purchasing it for him, and was employed by Hanford as his agent for that purpose.   Ely thereupon obtained a conveyance of the lot to Hanford for $4,050.   It was not pretended that Ely either was or *assumed* to be Hanford's agent at the time he entered into the contract with Metz.   In a suit by Hanford to recover the difference between the price paid by him and what the lot cost Ely, it was held, that while Ely's misrepresentation as to the ownership of the lot was such a fraud as would have enabled Hanford to rescind the contract *in toto*, yet, as Ely was not his agent at the time of the purchase from Metz, he could not recover from Ely the difference between what he had paid him and what the lot cost Ely.   In the opinion the court say: "This action, as we conceive, is sustainable only upon the ground that the relation of principal and agent existed betweed Hanford and Ely, at the time the latter contracted with Metz for the lot.   If before and at that time Ely had *undertaken* to act as the agent of Hanford to make the purchase for the latter, he would be liable in this action to refund to Hanford the difference between what Hanford paid him and what he paid Metz for the lot; for being Hanford's agent, this purchase from Metz would be Hanford's purchase and Hanford would therefore be entitled to the full benefit of the contract."

Watson v. Union Iron and Steel Co.

In the present case, the question of fact to be determined by the jury, so far as this theory of the case is concerned, then, was whether the defendant, at the time he made the purchase of said lands, *undertook* to act as the plaintiff's agent, or in other words, assumed to make the purchase on the plaintiff's account or for its benefit. As to this issue the evidence was conflicting. The defendant's evidence tended to show that the purchase was made by him in his own name and for his own benefit and without reference to the plaintiff. On the other hand, the plaintiff gave evidence of certain admissions and representations made by the defendant, not at the time of the purchase, but afterward and during the negotiations which resulted in the sale of the lands to the plaintiff. These admissions and representations undoubtedly were competent evidence tending to prove the character in which the defendant made the purchase, but they were only evidence. Had they been made at the time of the purchase and as a part of the *res gestæ*, they perhaps would have been conclusive, as the defendant would then, under the rule recognized in Reigard v. McNeil, have been estopped from denying his agency. But being made afterward, the doctrine of estoppel does not apply.

The instruction required the jury to find, not the fact in issue, viz., that the defendant at the time he purchased the lands assumed to purchase them as the plaintiff's agent, but only certain evidence tending to establish that fact, such evidence being only a portion of the evidence bearing upon that issue. This was clearly erroneous, as such evidential facts, even if found to exist, were not conclusive, and might or might not, in the light of all the evidence in the case, have convinced the jury of the existence of the fact which it was their duty to find.

For the error in giving the instruction, the judgment will be reversed and the cause remanded.

Judgment reversed.